UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON



Eastern District of Kentucky
FILED

FEB 1 5 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-142-GWU

MELISSA HILL,                                              PLAINTIFF,

VS.                    **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                 DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity?
   If yes, the claimant is not disabled. If no, proceed to Step 2.
   See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical
   or mental impairment(s)? If yes, proceed to Step 3. If no, the
   claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any
   impairment(s) significantly limiting the claimant's physical or
   mental ability to do basic work activities? If yes, proceed to

1

Hill

> Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R.
> 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hill

or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id</u>. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. <u>E.g., Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Hill

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d
279, 282 (6th Cir. 1985). Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments. Varley v. Secretary of Health and Human
Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Melissa Hill, was found by an Administrative Law Judge (ALJ)
to have "severe" impairments consisting of affective and anxiety disorders. (Tr. 19).
Nevertheless, based in part on the testimony of a medical expert (ME), the ALJ
found that, although the plaintiff met the Commissioner's Listing of Impairment (LOI)
Section 12.04 from January 1, 1999 to April 12, 2000, she afterward had only
"moderate difficulty" in maintaining social functioning in public or unknown places
and maintaining concentration, persistence, or pace for complex tasks. (Tr. 20). A
vocational expert (VE), presented with a hypothetical individual capable of this level
of functioning, with no exertional restrictions, answered that the plaintiff could
perform her past relevant work in a coal mine. (Tr. 189-91). Accordingly, the ALJ
determined that the plaintiff was not entitled to benefits after April 12, 2000. The
Appeals Council declined to review, and this action followed.

7

Hill

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The ALJ relied on the testimony of the Medical Expert (ME), Dr. Dixie Moore, to find that the plaintiff met Section LOI 12.04 starting January 1, 1999 and ending April 12, 2000. (Tr. 19-20). Dr. Moore, in turn, testified that the office notes of the plaintiff's treating family physician, Dr. Harold Bushey, reflected that the plaintiff was unable to control her thoughts at the very end of 1998 and she would place the onset date of the plaintiff's severe mental impairment as being January, 1999. (Tr. 187). The description of Mrs. Hill's behavior during treatment at the Kentucky River Community Care mental health clinic (KRCC) during 1999 included a Global Assessment of Functioning (GAF) score of 40 to 60, and the plaintiff was placed in an inpatient mental health treatment facility called the Bailey Center during this time. (Tr. 183). Dr. Moore's testimony regarding the termination of the plaintiff's status as meeting Section LOI 12.04 then becomes confusing. Initially, she indicated that the conclusion of Psychologist James Leisenring, who administered certain testing in July, 2001, that Mrs. Hill would be "significantly compromised" in working with supervisors, co-workers, and under certain types of work pressure had to be given weight, particularly in view of the fact that Mr. Leisenring had already decided that Mrs. Hill was malingering on intelligence testing. (Tr. 185). Dr. Moore stated that, to reconcile these factors, "one would have to say that the medication that she has

8

been taking is having a better effect [and] that perhaps treatment also is helping her deal with stressors[,] so she is able to function at a better level in the first of this year, January, 2002, as seen by Dr. Eggerman[,] than she was in 1999 and 2000." (Id.). After further questioning from the ALJ, Dr. Moore stated that the plaintiff's current level of functioning as assessed by Dr. Kevin Eggerman in January, 2002 (Tr. 136-40) did not show very much deterioration from her condition during the time she had been working (Tr. 186), and that by April 12, 2000, a note from KRCC "talk[s] about non-command auditory hallucinations which is of less severe (sic) than what was being described earlier, so I would assume that there's a much less severe level going on at that time." (Tr. 188). After further prompting by the ALJ, Dr. Moore stated that she agreed with the ALJ statement that "after that period you're saying that would fall within the testimony you gave us later." (Id.). This was presumably a reference to Dr. Moore's testimony that the plaintiff currently would have mild restrictions on her activities of daily living, mild to moderate limitations on social functioning and difficulties in maintaining concentration, persistence, and pace, and did not have any episodes of deterioration or decompensation.  (Tr. 182-3). However, Dr. Moore's testimony that she would have to give weight to Mr. Leisenring's July, 2001 opinion that the plaintiff would be significantly compromised in working with supervisors, co-workers, and under certain types of work pressure, seems to have been ignored, and not reconciled with the ALJ's ultimate finding that,

9

Hill

after April 12, 2000, the plaintiff would have only moderate difficulty in maintaining social functioning in public or unknown places, and maintaining concentration, persistence, or pace for complex tasks. (Tr. 20). Certainly, a review of the KRCC notes after April, 2000, shows that the plaintiff frequently complained of such problems as intrusive thoughts, staying mostly in her house, anxiety attacks several times a day, and daily panic attacks at least as late as November, 2000. (Tr. 131-5). There is also a note from November, 2001, in which the plaintiff states that she has as many as three or four panic attacks a day, and would hear voices making fun of her. (Tr. 125). Combined with the uncertainty about the weight which the ME intended to give Mr. Leisenring's July, 2001 opinion, these office notes create a serious question as to whether the plaintiff's condition really had improved above the listing level as early as found by the ALJ.

In addition, the ALJ noted in his decision that the plaintiff's family physician, Dr. Harold Bushey, "submits that the claimant cannot perform even sedentary work due to a ruptured lumbar disc and schizophrenia." (Tr. 18). While some office notes from Dr. Bushey are contained in the transcript (Tr. 59-66), there does <u>not</u> appear to be any statement from this source regarding an ability to work. Therefore, some of this evidence appears to be missing or the ALJ mistaken.

The ALJ relied on Dr. Mark Burns for his conclusions about the plaintiff's physical capacities, but the report of Dr. Burns is questionable in several respects.

10

Hill

First, Dr. Burns prepared a functional capacity assessment form in which he indicated that the plaintiff could "never" perform any climbing, balancing, kneeling, crouching, or crawling. (Tr. 122). Although this may have been a careless error, it should be addressed on remand, along with Dr. Burns' statement that the plaintiff's lumbar spine had "normal flexion and extension from zero to 90 degrees." (Tr. 119). It would be doubtful that even a circus acrobat could extend her spine as much as 90 degrees, much less a person of the plaintiff's body habitus.[1]

The decision will be remanded for further consideration of the factors outlined in this opinion.[2]

This the ___15___ day of February, 2006.

G. WIX UNTHANK
SENIOR JUDGE

---

[1]According to the American Medical Association's Guides to the Evaluation of permanent Impairment (4th Ed.) at p. 127-8, true lumbar extension is the T12 inclination angle minus the sacral inclination angle and a 25 degree extension represents 0 degrees lost.

[2]The Court also notes that, while it does not appear to be critical for the case, the ALJ, both in his decision and in questioning Dr. Moore, discussed a March, 1998 psychological evaluation by I.T. Baldwin, cited as Exhibit 4 F, which is not in the Court transcript. (Tr. 18, 183). The exhibit should be placed within the record on remand.

11